IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
LEWIS T. BABCOCK, CHIEF JUDGE

Civil Case No.  05-cv-002291-LTB

ARMANDO GUILLEN,

        Plaintiff,

v.

JO ANNE B. BARNHART, Commissioner of Social Security,

        Defendant.

_____

## ORDER

_____

Plaintiff, Armando Guillen, appeals from the Social Security Administration ("SSA")

Commissioner's final decision denying his applications for disability insurance benefits, filed

pursuant to 42 U.S.C. §§ 401-433, and for supplement security income, filed pursuant to 42

U.S.C. §§ 1381-1383c.  Jurisdiction is proper under 42 U.S.C. § 405(g).  Oral argument would

not materially assist me in the determination of this appeal.  After consideration of the parties'

briefs, as well as the administrative record, I AFFIRM the SSA Commissioner's final order.

## I.  STATEMENT OF THE CASE

Plaintiff seeks judicial review of the Commissioner's decision denying his applications for

disability insurance benefits and supplemental security income protectively filed in January of

2002.  [Administrative Record ("AR") 43]  The applications were initially denied on May 17,

2002.  [AR 38]   Upon Plaintiff's request, an Administrative Law Judge ("ALJ") conducted an

evidentiary hearing on September 16, 2004.  [AR 414]  The ALJ subsequently issued a written

ruling on November 23, 2004, denying Plaintiff's applications on the basis that he was not

disabled in that he retained the residual functional capacity to perform work at the medium level

of exertion, with limitations related to his interaction with others, and thus he was not precluded from performing his past relevant work as a food-service worker, equipment operating engineer, janitor, and automobile-body repairer as generally performed in the national economy  (Step Four).  [AR 26]

On September 22, 2005, the SSA Appeals Council denied Plaintiff's administrative request for review of the ALJ's determination, making the SSA Commissioner's denial final for the purpose of judicial review.  [AR 6]  *See* 20 C.F.R. §§  404.981, 416.1481.  Plaintiff timely filed his complaint with this court on November 10, 2005, in which he seeks review of the Commissioner's decision.

## II. FACTS

Plaintiff was born on October 25, 1949, and was 54 years old at the time of his hearing. [AR 20, 43]   He has a high school equivalent education and served in the military from 1969 through 1971.  [AR 88, 105, 112]   His past relevant work history includes working as a food service worker, equipment operator engineer, construction worker, janitor and auto body repairer. [AR 20, 71, 83]   Plaintiff alleges that he became disabled on September 1, 1998, due to depression, post traumatic stress disorder (PTSD), osteoarthritis, degenerative disc disease and problems with his vision and his hearing.  [AR 82, 421-25]

The medical records indicate that Plaintiff has been seeking mental health treatment since at least 1997 through the Veterans Administration for depression, post traumatic stress disorder and alcoholism. [AR 143]  This treatment includes psychotropic medication, group therapy and individual counseling, detoxification programs, etc.  [AR 22]

In February 1998, Plaintiff was diagnosed with moderate alcohol dependence and his

Global Assessment of Functioning (GAF) score at that time was 65.  [AR 141]   Three and a half

years later, on August 13, 2001, he was diagnosed with PTSD and alcohol abuse and his GAF

was assessed at 52.   [AR 111]  In January 2002, Plaintiff's GAF was assessed at 55.  [AR 110]

On April 11, 2002, Dr. Donald G. Glasco, the non-examining state agency psychiatrist,

completed a mental residual functional capacity assessment.  [AR 150, 172]   He found that

Plaintiff was either not significantly limited or moderately limited in his understanding and

memory, his sustained concentration and persistence, and his social interactions; he was not

significantly limited in his abilities to adapt.  [AR 172-73]   As a result, Dr. Glasco opined that:

> The claimant's alcohol dep., dysthymia, major depression and PTSD may
> occasionally prevent completion of a normal workday/week or cause a reduced
> pace.   However, he should be able to maintain attendance/pace within customary
> tolerances when work does not require more than simple instructions, ordinary
> routines and simple decision making (up to 1 month to learn).  He may not be able
> to work closely with supervisors or co-workers.  He should be able to accept
> supervision and relate to co-workers if contact is not frequent or prolonged.  He
> should have minimal to no interaction with the general public. [AR 174]

In early July, 2002, Plaintiff was voluntarily admitted to an inpatient psychiatric program

related to his PTSD and depression.  [AR 375]  His GAF on admission was assessed at 25.  [AR

368]  At discharge, on July 22, 2002, his GAF was assessed at 49.  [AR 356]   In August 2002,

Plaintiff successfully completed a substance abuse program after several past attempts failed.  [AR

410]

On January 31, 2003, Plaintiff's GAF was assessed at 47 [AR 318], and on September 26,

2003, it was assessed at 55.  [AR 301].   Four days later, Plaintiff was voluntarily admitted to five

and one-half  week  PTSD program  with a GAF of 38, when he was diagnosed with PTSD,

major depression and alcohol dependence.  [AR 273]  On November 14, 2003, a staff psychiatrist

opined that Plaintiff was "deemed to be unemployable due to severe social and industrial

impairment associated with PTSD."   [AR 204]  On January 12, 2004, Plaintiff's GAF score was

assessed at 50.  [AR 193]

At the hearing, Plaintiff testified that anxiety and nervousness interferes with his ability to

work.  [AR 421]  Plaintiff further testified that loud noises and sudden movements make him

"panicky," and that he feels inadequate, has no confidence in himself, and feels that he is being

judged.  [AR 421-22]

As to his physical impairments, the records first indicate that during a May 2001 physical,

Plaintiff denied problems with his hearing and reported no musculoskeletal complaints.  [AR 126]

That examination revealed full range of motion of all extremities, that his spine was without

deformity or tenderness, and indicated no noticeable hearing loss. [AR 126-27]   Nine months

later, in March 2002, Plaintiff presented with "some stiffness in lower back but no swelling or

spasm."  [AR 115]  At that time his primary care provider diagnosed him with degenerative disc

disease and gastroesophageal reflux.  [AR 115]

Subsequently, Dr. Robert Moghim performed a consultive examination on April 27, 2002.

[AR 157]   At that exam, Plaintiff reported lower back and neck pain and problems associated

with his hearing.  [AR 158]   As part of that examination, Dr. Moghim referred Plaintiff for

lumbar spine x-rays, which found "degenerative disc disease throughout the lumber spine most

marked at L4-L5 and L5-S1."  [AR 163]  After examining Plaintiff, Dr. Moghim opined that the

objective evidence did not support Plaintiff's allegation of severe lower back or neck pain.  Dr.

Moghim opined that based on Plaintiff's motor strength and range of motion, he should have no

restrictions on standing, walking, sitting or bending, and no other postural or manipulative

limitations, and would be capable of lifting "50 pounds occasionally and 25 pounds occasionally

[sic]."  [AR 161]

On May 9, 2002, Dr. Alan Ketelhohn, the non-examining state agency physician,

completed a physical residual functional capacity assessment after reviewing Plaintiff's medical

records.  [AR 164]   Dr. Ketelhohn's opinion was not significantly different than that of Dr.

Moghim.  [AR 170]   Dr. Ketelhohn concluded that Plaintiff could occasionally lift 50 pounds and

frequently lift 25 pounds, and that he could stand or walk, and sit 6 hours in a 8-hour work day.

Although he had some occasional posture (such as stooping and crouching) and environmental

limitations, he had no pushing and pulling, manipulative or visual limitations.  Dr. Ketelhohn also

concluded that he had no communicative limitations as he hears normal conversation despite his

tinnitus. [AR 168]  As a result, Dr. Ketelhohn opined that although Plaintiff had a medically

determinable impairment that would cause some pain and limitations, "the limitations are not

severe enough to prevent all types of work." [AR 169]

In September 2002, Plaintiff presented to his primary care provider complaining that his

back pain resulted in his inability to work as a mechanic.  [AR 327]  Examination revealed that his

lumbar range of motion was "not significantly restricted" and the doctor noted "multiple Waddell

pain behaviors."  [AR 328]  The notes indicate that the doctor admonished Plaintiff to look for a

job. [AR 328]

At the hearing, Plaintiff testified that he used a hearing aid, which he found to be helpful.

[AR 425]  Plaintiff further testified that back and leg pain prevented him from standing or walking

longer than 20-30 minutes. [AR 428-29]   He testified that his back pain started in 1998 and his

5

leg problems are associated with a broken leg he sustained in 1985.  [AR 429]  He noted that he

becomes out of breath when walking, lifting, or doing strenuous work, due to his weight.  [AR

429]   In response to the ALJ's question, Plaintiff indicated that he could only sit for 30-45

minutes, after which time he becomes "hyper" or anxious and needs to get up; he also notes that

he sometimes gets cramps when sitting.  [AR 429]

## II. LAW

A five-step sequential evaluation process is used to determine whether a claimant is

disabled, which is generally defined in the Social Security Act as the "inability to engage in any

substantial gainful activity by reason of any medically determinable physical or mental impairment

which can be expected to result in death or which has lasted or can be expected to last for a

continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A); *see also Bowen v.*

*Yuckert*, 482 U.S. 137, 137, 107 S.Ct.  2287, 96 L.Ed.2d 119 (1987); *Campbell v. Bowen*, 822

F.2d 1518, 1521 (10th Cir.1987).

Step One is whether the claimant is presently engaged in substantial gainful activity.  If he

is, disability benefits are denied.  *See* 20 C.F.R. §§ 404.1520, 416.920.  Step Two is a

determination whether the claimant has a medically severe impairment or combination of

impairments as governed by 20 C.F.R. §§ 404.1520(c), 416.920(c).  If the claimant is unable to

show that his medical impairments would have more than a minimal effect on his ability to do

basic work activities, he is not eligible for disability benefits.  Step Three determines whether the

impairment is equivalent to one of a number of listed impairments deemed to be so severe as to

preclude substantial gainful employment.  *See* 20 C.F.R. §§ 404.1520(d), 416.920(d).  If the

impairment is not listed, he is not presumed to be conclusively disabled.  Step Four then requires

the claimant to show that his impairment(s) and assessed residual functional capacity ("RFC")

prevents him from performing work that he has performed in the past.  If the claimant is able to

perform his previous work, the claimant is not disabled.  *See* 20 C.F.R. §§ 404.1520(e) & (f),

416.920(e)& (f).

Finally, if the claimant establishes a *prima facie* case of disability based on the four steps

discussed, the analysis proceeds to Step Five where the Secretary has the burden of proving that

the claimant has the RFC to perform other work in the national economy in view of his age,

education and work experience.  20 C.F.R. §§  404.1520(g), 416.920(g).

## IV.  RULING

The ALJ concluded that Plaintiff was not disabled.  [AR 27]  The ALJ first determined

that Plaintiff had not engaged in any substantial gainful activity since January 1, 2001.  (Step

One).  [AR 26]  The ALJ next found that Plaintiff had the following severe impairments:

depression, post traumatic stress disorder, and alcoholism.  [AR 26]    However, because

Plaintiff's had no impairment or combination of impairments of such severity as to medically meet

or equal any condition deemed to be so severe as to preclude substantial gainful employment

(Step Three), the ALJ went on to determine whether Plaintiff retained the RFC to perform the

requirements of his past relevant work.  [AR 26]

The ALJ found that Plaintiff retained the RFC for to perform work at the medium level of

exertion which does not require him to more than occasionally interact with supervisors, co-

workers and the general public.  [AR 26]   As a result, the ALJ determined that Plaintiff's past

work as a food-service worker, equipment operating engineer, janitor and automobile-body

repairer, as generally performed in the national economy, did not require the performance of work-related activities precluded by his RFC limitations (Step Four).   [AR 26]  Because Plaintiff's impairments do not prevent him from performing his past relevant work, the ALJ found that Plaintiff was not disabled under the standards of the Social Security Act.  [AR 27]

On appeal of the ALJ's decision, the SSA Appeals Council found no reason to review the ALJ's decision and, thus, denied Plaintiff's request for review, making the ALJ's decision final. [AR 6-8]   This appeal followed.

## V. STANDARD OF REVIEW

The function of my review is limited to determining whether the correct legal standards were applied, and to evaluating whether the factual findings are supported by substantial evidence in the record as a whole.  *Howard v. Barnhart*, 379 F.3d 945, 947 (10th Cir. 2004).   "Substantial evidence is more than a scintilla, but less than a preponderance; it is such evidence that a reasonable mind might accept to support the conclusion."  *Campbell v. Bowen*, *supra*, 822 F.2d at 1521 (*citing Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct.  1420, 28 L.Ed.2d 842 (1971)). I examine the record as a whole, including whatever in the record fairly detracts from the weight of the Secretary's decision and, on that basis, determine if the substantiality of the evidence test has been met.  *Casias v. Secretary of Health & Human Servs.*, 933 F.2d 799, 800 (10th Cir. 1991)(*citing Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488, 71 S.Ct.  456, 95 L.Ed. 456 (1951)).  I  may not re-weigh the evidence or substitute my judgment for that of the ALJ.  *See Casias v. Secretary of Health & Human Servs., supra*, 933 F.2d at 800; *Jozefowicz v. Heckler*, 811 F.2d 1352, 1357 (10th Cir. 1987).

## VI. ANALYSIS

*A. Severity Determination at Step Two*

Plaintiff's first claim on appeal is that the ALJ erred when she concluded that Plaintiff's "medically determinable impairment of the spine does not significantly limit [his] capability to perform basic work activities" and is therefore not "severe" at Step Two of the sequential analysis. [AR 21]   In support of this claim, Plaintiff argues that ALJ erred when determinating that the x-ray of his spine was "essentially normal," because it is the providence of a physician who has reviewed an x-ray to comment on the severity of the impairment.   Plaintiff also contends that because both Drs. Ketelhohn and Moghim found that Plaintiff had lifting restrictions, their opinions actually supported a finding that his degenerative disc disease was severe in that it significantly effected his ability to do his past work.

Whether a medically determinable impairment is "severe" is governed by 20 C.F.R. § 404.1520(c) and § 416.920(c).   Pursuant to the SSA severity regulations, the claimant must make a threshold showing that his medically determinable impairment or combination of impairments significantly limits his ability to do basic work activities, i.e., "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. §§ 404.1521(b), 416.921(b).   If the claimant is unable to show that his impairments would have more than a minimal effect on his ability to do basic work activities, he is not eligible for disability benefits.  If, on the other hand, the claimant presents medical evidence and makes the *de minimis* showing of medical severity, the decision maker proceeds to Step Three of the analysis. *Williams v. Bowen,* 844 F.2d 748, 751 (10th Cir. 1988).

Plaintiff asserts that when the evidence related to his degenerative disc disease is properly

9

reviewed, there is sufficient evidence to met a *de minimis* showing of a severe medically determinable impairment of the spine.  The records indicate that in May of 2001, Plaintiff denied any musculoskeletal complaints, which was confirmed by examination  [AR 126]  A March 2002 examination notes "some stiffness in lower back[,] but no swelling or spasm."  [AR 115]   Dr. Moghim's examination in April 2002 reveals some moderate flexing abnormalities, but he expressed concern about Plaintiff's efforts, and good motor strength and range of motion.  [AR 161]   Dr. Moghim opined that Plaintiff's claim of severe back pain was not supported by the objective examination findings, but further opined that Plaintiff should be limited to lifting "50 pounds occasionally and 25 pounds occasionally."  [AR 161]   Likewise, Dr. Ketelhohn opined in May 2002 that Plaintiff's spine impairment was not severe, but limited his lifting to 50 pounds occasionally and 25 pounds frequently.  [AR 168]   When Plaintiff complained that his back pain was preventing him from working in September 2002, an examination revealed no significant lumbar range of motion restrictions and Waddell behaviors.  [AR 328]

Plaintiff's primary argument appears to be that because both doctors concluded that his back impairment was not severe, yet also limited his ability to lift, and the ALJ concluded that this limitation precluded him from doing his past relevant work *as he had performed it*, then he met the *de minimis* standard of proving severity.  However, the SSA regulations indicate that an impairment is not severe if it does not significantly limit a claimant's ability to do basic work activities, which consist of the abilities and aptitudes necessary to do *most* jobs.  20 C.F.R. §§ 404.1521(b), 416.921(b).

Furthermore, the record indicates that the ALJ considered and weighed the medical

evidence when assessing the severity of Plaintiff's degenerative disc disease, and my review reveals substantial evidence in support of the ALJ's determination of non-severity.  I reject Plaintiff's argument to the extent that he asserts that the ALJ's statement that she afforded Drs. Moghim and Ketelhohn "considerable weight" somehow resulted in a wholesale acceptance of their opinions in their entirety.  At any rate, the ALJ did accept their opinions as to the issue of the severity of Plaintiff's spine impairment.  [AR 24]   As to Plaintiff's claim that the ALJ erred in reviewing the x-ray of his spine, the ALJ found that the "record indicates an X-ray of the lumbar spine was performed on April 27, 2002 that showed no significant change from a film of March 3, 2001.  The 2002 X-ray was essentially normal with only a mild narrowing of two disc spaces at L4-L5 and L5-S1."  [AR 21]   On this record, the ALJ's finding that the x-ray was essentially normal was not based on an independent reading or analysis, as argued by Plaintiff, but rather was in accordance and consistent with reviews of the x-ray by the medical personnel. [AR 163, 166]

Finally, I note that although the ALJ determined that Plaintiff's degenerative disc disease was not severe, she did conclude that Plaintiff had other severe impairments.  As a result, she proceeded to Step Three of the sequential analysis used to determine disability.  At Step Three, the ALJ specifically indicated that although Plaintiff's back pain was not considered "severe" in and of itself, she nevertheless considered it to the extent that it aggravated Plaintiff's severe mental impairments when assessing his residual functional capacity, as was required pursuant to 20 C.F.R. § 404.1523 and § 416.923.

In sum, I conclude that the ALJ's determination that Plaintiff's spine impairment was not severe was supported by ample evidence in the record.

11

*B.  Physical Limitations in Determining RFC*

Plaintiff next argues that the ALJ erred when assessing the physical restrictions of his RFC.   Specifically, Plaintiff contends that the ALJ failed to mention or include in his RFC assessment  the postural limitations of occasional stooping and crouching as opined by Dr. Ketelhohn.  Because his past work was at the medium to heavy exertion level, which Plaintiff maintains requires frequent stooping and crouching, he argues that the ALJ's failure to address and include these postural restrictions was erroneous.

A plaintiff's RFC represents the capacity of a claimant to perform work, despite physical and/or mental impairments.  RFC is defined as "the most you can still do despite your limitations." 20 C.F.R. §§ 404.1545(a), 416.945(a).  The ALJ must assess a plaintiff's RFC based on all the relevant evidence in the case record.  *Id.*

First, as discussed above, the ALJ's decision to give Dr. Ketelhohn's opinion "considerable weight" was not a wholesale acceptable of his conclusions regarding Plaintiff's limitations.   The Plaintiff has not referred me to, nor can I find, any clinical or objective medical evidence related to Plaintiff's ability to stoop and crouch – in fact, the evidence is primarily that he had full range of motion and only moderate abnormalities with bending and flexing.  The ALJ accurately noted and relied upon the paucity of medical treatment evidence related to Plaintiff's physical concerns, including his musculoskeletal complaints.  [AR 21]   The ALJ specifically found, which finding is supported by substantial evidence, that although Plaintiff has "some degenerative changes of the low back, his allegations are not fully credible to the severity, extent and duration the [Plaintiff] alleges."  [AR 24]   As a result, the ALJ's "failure" to discuss or include stooping and crouching limitation in her RFC assessment does not constitute error.  *See*

*Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996)(the ALJ need not discuss every piece of evidence, she need only provide a sufficient discussion as to allow for meaningful review by the court).

## C.  Mental Limitations in Determining RFC

Plaintiff likewise contends that the ALJ erred when she failed to "follow" the opinion of the state agency psychiatrist, Dr. Glasco, regarding Plaintiff's mental restrictions, despite giving his opinion  "considerable weight."   Specifically, Plaintiff contends that Dr. Glasco's opinion was that Plaintiff:  1) should have "minimal to no interaction with the general public" – as opposed to the occasional public contact in the ALJ's RFC assessment; and 2) the work should require not more than simple instructions, ordinary routines and simple decision making – restrictions that are not contained or mentioned in the ALJ's RFC assessment.

Again, the ALJ's alteration or failure to include limitations in Plaintiff's RFC that Dr. Glasco opined were applicable does not constitute error.  The ALJ correctly noted that Dr. Glasco "assessed [Plaintiff's] severe mental impairments as causing less than marked functional limitations."  [AR 24]  When assessing Plaintiff's mental impairments, the ALJ noted that most of his anxiety and depression symptoms – including difficulty with memory and concentration and suicidal ideation – were intertwined with his past heavy alcohol and drug use.  [AR 22]  The ALJ noted that Plaintiff had functioned many years with depression and PTSD, but that his GAF ranges indicate "only moderate difficulty in social or occupational functioning."  [AR 23]

When assessing his mental limitations, the ALJ found, with record support, that:

Although [Plaintiff] has limitations of function because of medically determinable mental impairments, the evidence indicates that his activities of daily living, social

13

functioning, concentration, persistence, or pace are not markedly limited, and he does not experience episodes of decompensation of extended duration. [Plaintiff] is able to perform house chores and self care and is generally described throughout the record as appropriately or well groomed. Although [Plaintiff] reports difficulty getting along with co-workers and self limits his activities, [Plaintiff] describes himself as "likeable" and friendly" and maintains a good relationship with his daughter, who he routinely visits on holidays. [AR 23]

The ALJ further noted that Plaintiff cooperates in therapy, that his medications were primarily at a maintenance level, and the lack of hospitalizations or periods of decompensation for any emotional condition. [AR 23]

As such, I conclude that there is substantial evidentiary support in the record for the ALJ's determination, as part of her RFC assessment, that Plaintiff is capable of occasional public contact and is not limited to performing work that involves simple instructions, ordinary routines and simple decision making.

Accordingly, IT IS ORDERED that the Commissioner's decision is AFFIRMED.

Dated: August 8, 2006 in Denver, Colorado.

BY THE COURT:

  s/Lewis T. Babcock
LEWIS T. BABCOCK, CHIEF JUDGE